Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| LYDIA LUNA ROCHE<br><br>Demandante - Apelada<br><br>v.<br><br>SUCESIÓN DE JOSÉ W. RODRÍGUEZ MARTÍNEZ SUS HIJOS; WANDA RODRÍGUEZ ZAYAS, GLENDA RODRÍGUEZ ZAYAS, JOSÉ WIGBERTO RODRÍGUEZ ZAYAS<br><br>Demandados – Apelantes | KLAN202400756 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Ponce<br><br>Civil núm.: PO2021CV02166 (601)<br><br>Sobre: Acción civil de dominio de propiedad inmueble y cumplimiento específico de acuerdo y/o contrato |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de febrero de 2025.

Luego del correspondiente juicio en su fondo, el Tribunal de Primera Instancia ("TPI") declaró titular de un inmueble a la compañera de un causante quien, en vida, por medio de un contrato escrito, le cedió el mismo a cambio de que esta se encargara de los pagos de hipoteca. Según se explica en detalle a continuación, concluimos que procede la confirmación de la sentencia apelada porque, de conformidad con la prueba, el TPI podía concluir que la demandante cumplió con lo acordado en un contrato válido.

I.

En septiembre de 2021, la Sa. Lydia Luna Roche (la "Demandante") presentó la acción de referencia, sobre cumplimiento específico de contrato y dominio (la "Demanda"), contra los miembros de la sucesión del Sr. José W. Rodríguez Martínez (el "Causante"), entiéndase, los hijos de este: Wanda, Glenda y José Wigberto, todos de apellido Rodríguez Zayas (los "Hijos").

La Demandante alegó que convivió con el Causante por varios años hasta que este falleció. Sostuvo que, en el 2013, ella y el Causante otorgaron un contrato privado (el "Contrato") en el que plasmaron que un inmueble ubicado en la Urb. Colinas del Prado, #82 Calle Príncipe William, en Juana Díaz (la "Propiedad"), aunque fue adquirido por un préstamo tomado por el Causante en el año 2011, había sido cedido a la Demandante por el balance de la hipoteca. El Contrato se suscribió por escrito, y bajo juramento, ante la Lcda. Magdalena Caratini Soto.

La Demandante alegó que, desde la firma del Contrato, realizó todos los pagos de la hipoteca que grava la Propiedad. Sin embargo, reconoció que no se otorgó la escritura de compraventa a esos efectos, ni se elevó al Registro de la Propiedad dicho negocio jurídico. No obstante, la Demandante sostuvo ser la legítima titular y poseedora de la Propiedad y, en consecuencia, solicitó que el TPI así lo reconociera y que se ordenara la inscripción de la Propiedad a su favor.

Luego de varios trámites procesales, en abril de 2022, los Hijos contestaron la Demanda. Sostuvieron que el Causante compró la Propiedad, mediante escritura pública, que nunca se hizo la escritura de compraventa entre el Causante y la Demandante, y que ellos eran los legítimos titulares de la Propiedad.

El 11 de junio de 2023, las partes presentaron el *Informe Preliminar sobre Conferencia con Antelación a las Vista* (el "Informe"). En el Informe, las partes estipularon lo siguiente:

1. Que la demandante Lydia Luna tuvo una relación consensual con el difunto José W. Rodríguez Martínez.

2. Copia de la Escritura número 319 sobre Segregación, Liberación y Compraventa.

3. Resolución sobre Declaratoria de Herederos, caso número JD2021CV00311.

El juicio en su fondo se celebró el 12 de diciembre de 2023. La Demandante presentó la siguiente prueba documental:

Exhibit 1 – Contrato de Compraventa.

Exhibit 2 – Estados de evidencia de pago 2013-2019 (Exhibit 2 A hasta Exhibit 2 C).

Por su parte, los Hijos presentaron la siguiente prueba documental:

Exhibit A – Solicitud Exención Contributiva.

Exhibit B – Settlement Statement.

Exhibit C – Estado de Cuenta 163242682 septiembre 2020.

Exhibit D – Escritura de compraventa.

Exhibit E – Declaración Jurada Impulso Vivienda.

Exhibit F – Resolución Declaratoria Herederos.

Exhibit G – Planilla Caudal Relicto.

Exhibit H – Relevo de Hacienda.

Exhibit I – Contrato de Arrendamiento.

A continuación, resumimos los testimonios presentados durante el juicio, según la transcripción estipulada por las partes ("TPO").

1. **La Demandante (señora Luna Roche)**. La testigo actualmente tiene 76 años. Declaró que, para el año 2009 o 2010, conoció al Causante.[1] En el 2011, el Causante compró la Propiedad y, en el 2013, pagaba aproximadamente $695.00. La Demandante reside en la Propiedad hace trece (13) años, desde el 2011 hasta el presente.[2] Expuso que, el 1 de marzo de 2013, otorgó con el Causante un contrato privado de compraventa (Exhibit 1) ante la licenciada Caratini Soto en el que acordaron que ella pagaría la Propiedad.[3] Desde esa fecha, asumió la hipoteca, la cual pagaba en

---

[1] Transcripción de la prueba oral (TPO), pág. 19.
[2] Íd., págs. 19-21.
[3] Íd., págs. 21 y 25-26.

efectivo de su seguro social, aunque en el 2013 y 2014 la pagó con cheque a favor de Oriental Bank.[4] La Demandante afirmó que realizó mejoras a la Propiedad consistentes en dos verjas laterales de diez (10) pies de altura, una terraza techada con su piso, un "laundry" y una verja de hierro con talud.[5] Expresó que el Causante falleció el 31 de diciembre de 2020.[6]

En el contrainterrogatorio, se le preguntó si el Causante compró la Propiedad con escritura. La Demandante respondió "me imagino que sí". Admitió que la Propiedad está inscrita en el Registro de la Propiedad a nombre del Causante. Además, reconoció que no aparece como compradora en la aludida escritura pública.[7]

La Demandante aceptó que la Propiedad está registrada en el Centro de Recaudación de Ingresos Municipales (CRIM) a nombre del Causante y que también cuenta con una ayuda de la Vivienda para la Compra de su Hogar; el FHA.[8] Luego, declaró que únicamente fue donde la licenciada Caratini Soto, quien redactó el contrato de compraventa, y no se hizo alguna otra gestión para hacer una escritura de compraventa.[9]

Además, declaró que para el 2013 estaba divorciada y no trabajaba. Recibía una pensión alimentaria de $1,500 mensuales[10], una renta de una propiedad en Valle Alto que era aproximadamente $900, y el Seguro Social, que era alrededor de $700.[11]

Respecto a la relación que tenía con el Causante, la Demandante declaró que no tenía una relación consensual con él y que su relación era de amistad.[12] Añadió que, al ella no cualificar

---

[4] Íd., págs. 32-33.
[5] Íd., pág. 34.
[6] *Ibid.*
[7] Íd., págs. 41-42.
[8] Íd., págs. 43-44.
[9] Íd., págs. 45-46.
[10] Íd., págs. 46-47.
[11] Íd., págs. 50-51, 61, 76, 79-80 y 91.
[12] Íd., págs. 57-58.

para la compra de la Propiedad, el Causante quiso ayudarla a comprar.[13]

En cuanto a la propiedad en Valle Alto, la Demandante declaró que no la tiene porque la vendió por un contrato de compraventa.[14] Se le preguntó si no tenía ingreso de rentas de la propiedad en Valle Alto y respondió que "en estos momentos no".[15] En cuanto a las mejoras de la Propiedad, la Demandante no recordó las fechas en que estas fueron realizadas. No obstante, declaró que, "si me hubiesen avisado, yo traía las fechas exactas".[16]

Asimismo, declaró que le daba dinero "cash" al Causante para que él pagara la Propiedad; y que en dos ocasiones ella realizó los pagos.[17] Sostuvo que el dinero "cash" lo sacaba de la pensión alimentaria que recibía por $1,500 mensuales y el alquiler de la residencia en Valle Alto que era aproximadamente $900.00 mensuales.[18] Añadió que el inmueble en Valle Alto pagaba aproximadamente $638.40. La renta que recibía de dicha propiedad no la depositaba en su cuenta bancaria y con ese dinero pagaba la deuda de la Propiedad.[19]

Respecto al ingreso del Seguro Social, la Demandante declaró que le era depositado en su cuenta bancaria, aunque indicó que, en el estado de cuenta de febrero a marzo de 2013, no aparece ningún depósito directo que establezca que el ingreso depositado era del Seguro Social.[20]

**2. Sa. Wanda Milagros Rodríguez Zayas (señora Rodríguez Zayas).** La señora Rodríguez Zayas es hija del Causante. Declaró que es contadora de profesión, que su padre era contador

---

[13] Íd., pág. 59.
[14] Íd., pág. 60
[15] Íd., pág. 61.
[16] Íd., págs. 72-73.
[17] Íd., págs. 73-75.
[18] Íd., págs. 75-76.
[19] Íd., págs. 76-77 y 80-81.
[20] Íd., págs. 80 y 83-84.

público autorizado y que trabajó en su oficina de contabilidad durante 25 años.[21] Expuso que, luego de la muerte de su padre, preparó la Declaratoria de Herederos, la Planilla de Caudal Relicto y tramitó el Relevo de Hacienda donde están incluidas la Propiedad y la deuda hipotecaria como bienes y deudas del caudal.[22] Afirmó que la Propiedad le pertenecía a su padre[23], y que fue él quien realizó todas las mejoras en la casa.[24]

También declaró que su padre era pareja de la Demandante, que la relación comenzó en el 2010 y que vivieron juntos en la Propiedad aproximadamente 4 años.[25] Explicó que el Causante era quien se encargaba de pagar la hipoteca de la Propiedad y la pagaba "cash".[26]

En el contrainterrogatorio, la señora Rodríguez Zayas expresó que no tiene evidencia de algún pago de la hipoteca que haya hecho su papá porque se decomisaron, ni evidencia de pago de las mejoras a la Propiedad.[27] Admitió que, luego de fallecer el Causante, la Demandante siguió pagando la Propiedad.[28] Finalmente, en el redirecto, declaró que en el 2021 la Demandante alquiló la Propiedad porque no podía pagarla.[29]

El 27 de junio de 2024, el TPI notificó una *Sentencia* (la "Sentencia") mediante la cual declaró con lugar la Demanda. El TPI formuló las siguientes determinaciones de hechos:

> 1. La parte demandante Sra. Lydia Luna Roche y el difunto Sr. José W. Rodríguez Martínez, luego que éste último enviudara; convivieron como pareja sin estar casados por varios años hasta el fallecimiento del causante. Ello según testimonio creído de la parte demandada y la teoría de la parte demandante.

---

[21] Íd., págs. 132-135 y 139.
[22] Íd., págs. 135-136.
[23] Íd., pág. 136.
[24] Íd., pág. 137.
[25] Íd., págs. 137-138 y 140.
[26] Íd., pág. 140.
[27] Íd., págs. 144-145.
[28] Íd., págs. 148-149.
[29] Íd., pág. 153.

2.  Con fecha del 30 de noviembre del 2011 el difunto Sr. José W. Rodríguez Martínez adquirió mediante escritura pública número 319 ante la notaria Dianne M. Pérez Sebastián, la propiedad ubicada en las Parcela Colinas Del Prado, identificada como la parcela número 2 en el Barrio Amuelas del término municipal de Juana Díaz. Según surge del Exhibit A al [sic] de la parte Demandada.

3.  La demandante Lydia Lunas, residió en dicha propiedad desde su adquisición hasta el fallecimiento de José W. Rodríguez Martínez y posterior a dicho fallecimiento. Según surge del testimonio creído de ambas partes.

4.  La parte demandante realizó mejoras y reparaciones a dicha residencia consistente y verjas laterales, posteriores, y otras. Según el testimonio creído, admitido y no controvertido de la parte demandante y el Exhibit 1 Contrato de Compraventa una vez admitido y aquilatado el contenido del mismo.

5.  Durante el 2013 (mucho antes de su fallecimiento del Sr. José W. Rodríguez Martínez) el difunto y la demandante otorgaron un documento firmado ante notario, denominado contrato. Según surge del Exhibit 1 Contrato de Compraventa de la parte demandante admitido, no controvertido y aquilatado su contenido.

6.  En dicho documento y como parte de su contenido, la demandante y el difunto José W. Rodríguez Martínez plasmaron varios hechos y acuerdos; entre ellos el hecho de que la propiedad ubicada en la Urb. Colinas del Prado #82 Calle Príncipe William de Juana Díaz, fue adquirida por y con un préstamo de Scotiabank a favor del difunto en el año 2011, que paga[b]a $630.00 mensuales, que los servicios de luz y agua estaban a nombre de la demandante desde su adquisición, que recibió $1,000.00 como compra de dicho inmueble y por ende vende, cede y traspasa su título de dicha propiedad, que la demandante asumió la hipoteca, que la demandante realizó todos los pagos hipotecarios desde el primero en diciembre del 2011. El difunto se acordó y comprometió a comparecer ante el banco que la propiedad aparezca en banco y registro de la propiedad en escritura pública a nombre de la demandante. Según surge del Exhibit 1 Contrato de Compraventa de la parte

demandante habiendo sido admitido y aquilatado el mismo.

7. El tribunal toma conocimiento judicial del procedimiento de declaratoria de herederos llevado a cabo en el caso JD2021CV00311 sobre el fallecimiento de José Wilberto Rodríguez Martínez el 31 de diciembre de 2020 y sus herederos según declarados judicialmente así también del cumplimiento con el código de rentas internas del Gobierno de Puerto Rico ante expedición del correspondiente Relevo de [Hacienda].

8. Los demandados son los herederos, en común proindiviso y en partes iguales de todos los bienes y deberes del difunto Sr. José W. Rodríguez Martínez.

9. La demandante realizó pagos hipotecarios, desde el 2013, de la propiedad ubicada en Urb. Colinas del Prado #82 Calle Príncipe William de Juana Díaz, de su cuenta de Oriental según testimonio admitido y aquilatado del demandante corroborado por los Exhibits 2 A, al 2 C admitidos y aquilatados.

10. Los demandados, posterior al fallecimiento de su padre José W. Rodríguez Martínez hasta la radicación de la demanda y su contestación, no han solicitado la reposesión de la propiedad, ni han realizado ningún acto de dominio sobre la misma. Según surge del testimonio en contrainterrogatorio de los demandados.

11. La demandante ha poseído de manera mediate [sic] e inmediata la propiedad descrita, desde diciembre de 2011 hasta el presente residiendo en ella o dándola en alquiler.

12. Los demandados no han realizado ningún acto de dominio o posesión, tanto propio como derivado del título heredado por su padre. Surge del testimonio en contrainterrogatorio recogido y aquilatado a los demandados.

A tenor con las determinaciones de hechos transcritas, el TPI reconoció a la Demandante como titular de la Propiedad y ordenó a los Hijos a comparecer ante notario público para firmar la correspondiente escritura de compraventa.

El 11 de julio, los Hijos solicitaron la reconsideración de la Sentencia, lo cual fue denegado por el TPI mediante una *Resolución* notificada el mismo día.

Inconformes, el 9 de agosto, los Hijos presentaron el recurso que nos ocupa; formularon los siguientes señalamientos de error:

1. Erró el Tribunal de Primera Instancia al declarar con lugar la Demanda basándose en determinaciones de hechos incorrectas y contrato ilegal.

2. Erró el Tribunal de Primera Instancia al decretar que la residencia pertenece a la demandante.

En esencia, los Hijos arguyeron que la prueba realmente demostró que quien pagaba la Propiedad, y sus mejoras, era el Causante, y señalaron que, si este hubiese querido traspasar la Propiedad a la Demandante, hubiese otorgado una escritura pública.

Oportunamente, los Hijos presentaron una copia de la transcripción de la prueba oral vertida en el juicio y un alegato suplementario. Por su parte, la Demandante instó su alegato en oposición. Resolvemos.

II.

Las "obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia". Art. 1042 del Código civil, 31 LPRA sec. 2992.[30] Por su parte, el Artículo 1044 del Código Civil, 31 LPRA sec. 2994, dispone que "las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse a tenor de los mismos". Además, el Artículo 1206 del referido cuerpo legal aclara que el contrato existe desde que una o varias personas consienten en obligarse respecto

---

[30] Hacemos referencia al código vigente a la fecha de los hechos.

de otra u otras a dar alguna cosa o prestar algún servicio. 31 LPRA sec. 3371.

En virtud de lo anterior, desde el momento del perfeccionamiento de un contrato, cada contratante se obliga, "no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Art. 1210 del Código civil, 31 LPRA sec. 3375. En ese sentido, el Artículo 1206 dispone que se reputa existente el contrato "[d]esde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio". 31 LPRA sec. 3371.

Los contratos se perfeccionan por el mero consentimiento y, desde entonces, obligan al cumplimiento de lo expresamente pactado y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, 31 LPRA 3375. Es decir, "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez". Art. 1230 del Código Civil, 31 LPRA sec. 3451. Así, una vez perfeccionado un contrato, sus disposiciones tienen fuerza de ley entre las partes, y tienen que ser cumplidas. *VDE Corporation v. F & R Contractors,* 180 DPR 21, 34 (2010).

A tales efectos, "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez". Art. 1230 del Código Civil, 31 LPRA sec. 3451. A su vez, el Artículo 1231 de dicho Código establece que "[s]i la ley exigiere el otorgamiento de escritura u otra forma especial para hacer efectivas las obligaciones propias de un contrato, los contratantes podrán compelerse recíprocamente a llenar aquella forma desde que hubiese intervenido el

consentimiento y demás requisitos necesarios para su validez". 31 LPRA sec. 3452.

Por su parte, el Artículo 1232 del Código Civil dispone que "[d]eberán constar en documento público: (1) Los actos y contratos que tengan por objeto la creación, transmisión, modificación o extinción de derechos reales sobre bienes inmuebles". 31 LPRA sec. 3453.

Ahora bien, como regla general, tienen validez y eficacia los actos que, a pesar de lo dispuesto en el Artículo 1232, *supra*, no consten en instrumento público. Como nos explica el tratadista José Puig Brutau, comentando el Artículo 1.280 del Código civil español, equivalente al Artículo 1232 del Código Civil de Puerto Rico:

> [...] Los contratos son válidos por regla general «cualquiera que sea la forma en que se hayan celebrado» (art. 1.278); pero, no obstante, si se trata de alguno de los que enumera el art. 1.280, los contratantes podrán «compelerse recíprocamente a llenar aquella forma» prescrita. En consecuencia, los contratos enumerados en el art. 1.280 son válidos en todo caso entre los contratantes, sin perjuicio de que estos puedan compelerse a otorgar el documento a que se refiere el mismo artículo.

> [...] Con la interpretación dominante, el art. 1.280 *queda limitado a ser una lista de actos que el legislador considera que deben constar en documento público a petición de una de las partes contratantes.* Generalmente se dice que los requisitos de forma que exige este artículo son meramente *ad probationem*, en contraposición a los que se exigen en algunos casos concretos, que exigen la forma como requisito *ad solemnitatem* o de manera indispensable para la misma perfección del contrato. Pero no se trata de que dicha forma *ad probationem* sea la única admitida para probar la existencia del contrato del que se trate. [...]. (Énfasis suplido y en el original).

J. Puig Brutau, *Compendio de Derecho Civil*, 2da. Ed., Barcelona, Ed. BOSH, S.A., 1994, Vol. II, a las págs. 208-209.

Por su parte, el tratadista José María Manresa y Navarro comenta al respecto que:

> Reuniendo el contrato todas las condiciones necesarias para su validez, la falta de escritura no

obsta a la eficacia del mismo, pues lo prevenido en el artículo 1.280 según reiterada jurisprudencia del Tribunal Supremo, no tiene otro alcance que el poderse compeler los contratantes a elevar el contrato a escritura. [...]

Según el artículo 1.279 del Código civil [Artículo 1231 del Código civil de Puerto Rico], en el supuesto de que no se hubiera llenado la forma seguida por ley, sólo están autorizadas las partes a compelerse recíprocamente a llenar aquella forma, *nunca para solicitar la inexistencia del contrato.* [...]

Con arreglo a constante jurisprudencia la falta de escritura pública, de acuerdo con lo establecido en el artículo 1.270 del Código civil [Artículo 1222 del Código civil de Puerto Rico], no obsta la eficacia del contrato para su validez. [...] (Énfasis suplido.)

J. María Manresa y Navarro, *Comentarios al Código Civil Español*, 6ta. Ed., Madrid, Ed. Reus, S.A., 1967, T. VIII, V. II, págs. 670-671.

III.

De otra parte, el ejercer nuestra función revisora le debemos deferencia a las determinaciones de hechos que hace el juzgador de hechos, en particular a aquellas que descansan sobre su apreciación de la credibilidad de testigos. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-772 (2013); *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011). Es dicho juzgador (en este caso, el TPI) quien está en mejor posición para evaluar la prueba, ya que tiene la oportunidad de escuchar a los testigos mientras declaran y de observar su comportamiento. *Íd*; *E.L.A. v. S.L.G. Negrón-Rodríguez*, 184 DPR 464, 486 (2012); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

Los foros apelativos solo podemos intervenir con la apreciación de la prueba oral que haga el juzgador de los hechos cuando éste haya actuado con pasión, prejuicio o parcialidad, o haya incurrido en un claro error al aquilatarla. *Dávila Nieves*, 187 DPR a la pág. 771; *González Hernández*, 181 DPR a las págs. 776-777; *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916

(2011); *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000). Se podrá intervenir cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba y cuando la apreciación de la misma se distancia "de la realidad fáctica o sea inherentemente imposible o increíble". *Pueblo v. Santiago et al.*, 176 DPR 133, 148 (2009).

Claro está, se exceptúan de la regla de deferencia las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos están en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *González Hernández*, 181 DPR a la pág. 777.

IV.

Examinada la totalidad del récord y la transcripción de la prueba oral desfilada, concluimos que procede confirmar la Sentencia. No podemos concluir que haya incurrido en "claro error" el TPI en su apreciación de la prueba oral. De conformidad con la prueba creída por el TPI, entre la Demandante y el Causante se pactó el traspaso de la Propiedad a cambio de que la Demandante asumiera el pago de la hipoteca, y esta cumplió con su parte del acuerdo. El récord claramente contiene apoyo para las determinaciones fácticas del TPI y, como cuestión de derecho, procedía conceder el remedio solicitado por la Demandante. Veamos.

Primero, la totalidad de la prueba apoya la conclusión de que la Demandante y el Causante sostuvieron una relación consensual por varios años. Por tanto, aun si, como plantean los Hijos, el Causante le entregaba dinero a la Demandante, ello no cambia el hecho que el TPI consideró probado: la Demandante era quien pagaba la hipoteca de la Propiedad. Adviértase que es usual que, en una relación de pareja, las personas se entreguen dinero para ayudarse con diversos gastos, individuales o comunes.

Segundo, el TPI tuvo ante sí un documento escrito, suscrito ante una abogada, en el cual el Causante y la Demandante acordaron la compraventa de la Propiedad. En el mismo, las partes reconocieron que la Propiedad desde su adquisición fue pagada por la Demandante y que esta realizó actos de mejoras y residía en la misma, aunque el Causante es quien aparecía en la escritura de compraventa de la Propiedad.

En el Contrato, los otorgantes hicieron constar que el Causante "quiere con este acto de honestidad **proteger a la compradora especialmente si fallece antes de culminar las transacciones debidas** de que dicha propiedad esté a nombre de la compradora Sra. Lydia Luna Roche y **protegerla de los herederos del Sr. (sic) Wigberto Rodríguez Martínez**",[31] es decir, los Hijos, aquí Apelantes. (Énfasis provisto). Es decir, precisamente de un pleito como el de autos es que el Causante intentó proteger a la Demandante, su entonces compañera consensual.

Tercero, según arriba explicado, y contrario a lo aducido por los Hijos, el Artículo 1232 del Código Civil de 1930, *ante*, no impone ninguna exigencia de forma, de "carácter constitutivo", que anule el contenido del Contrato, si no se cumple con determinados requisitos.[32] Nada de lo dispuesto en dicho artículo contraviene la norma general de libertad en la contratación. Así pues, los contratantes pueden compelerse recíprocamente a elevar el acuerdo a un documento público.

En conclusión, las determinaciones de hecho formuladas por el TPI están apoyadas en base suficiente y se sostienen con la prueba presentada. Ante la ausencia de pasión, prejuicio, parcialidad o

---

[31] Véase, contrato de compraventa, Apéndice 7 del recurso de apelación, págs. 34-35.
[32] Véase, Art. 1230 del Código Civil de 1930, *supra*.

error manifiesto del TPI, no intervendremos con su apreciación de la prueba.

V.

Por los fundamentos que anteceden, se confirma la Sentencia apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones