Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| JOSÉ M. MARXUACH FAGOT Y OTROS<br><br>Parte Recurrida<br><br>v.<br><br>SUCESIÓN DE PEDRO REMBERTO FAGOT BIGAS Y OTROS<br><br>Parte Peticionaria | TA2026CE00311 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2024CV00586<br><br>Sobre: División o Liquidación de la Comunidad de Bienes Hereditarios y otros |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de abril de 2026.

Comparece la Sucesión de Pedro Remberto Fagot Bigas, compuesta por Emilio Fagot Rodríguez, Schira Fagot Maldonado y María Celeste Bigas Kennerley (en conjunto, parte demandada o peticionaria) mediante recurso de *certiorari*[1] y nos solicita que revoquemos dos resoluciones dictadas por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan. En la primera, emitida el 26 de septiembre de 2025, y notificada el 30 de septiembre de 2025, el foro primario declaró ha lugar la *Moción Solicitando se Ordene Depósito Judicial*, mientras que en la segunda, emitida el 9 de febrero de 2026, y notificada el 10 de febrero de 2026, denegó descalificar a la Lcda. Joanna Bocanegra Ocasio de la representación legal de la parte demandante.

Examinado el recurso, el escrito en oposición y los documentos que componen el expediente judicial, expedimos el auto de *certiorari*, revocamos la *Resolución* del 26 de septiembre de 2025, y confirmamos el dictamen emitido el 9 de febrero de 2026.

---

[1] *Petición de Certiorari*, SUMAC-TA del recurso TA2026CE00311, Entrada 1.

**I.**

Surge del expediente que el caso de autos se originó el 24 de enero de 2024, cuando José M. Marxuach Fagot, María E. Marxuach Fagot, Acisclo M. Marxuach de la Cuétara y Carmen M. Fagot Bigas, por sí y en representación de la Sucesión de Margarita Bigas Ojeda y de la Sucesión de Pedro Remberto Fagot Rodríguez, incoaron una *Demanda* sobre nulidad parcial de testamento, liquidación y partición de herencia, nombramiento de administrador y daños y perjuicios contra la parte demandada.[2]

Luego de varias incidencias procesales, el 25 de septiembre de 2024, la parte demandada presentó su *Contestación Preliminar a Demanda*.[3] En esta, negó la mayoría de las alegaciones en su contra y planteó que la parte demandante se había negado a contestar un interrogatorio que le había sido cursado previamente, por lo que no se encontraba en posición de aseverar o negar la mayoría de las alegaciones, ni de levantar todas las defensas a las que tuviera derecho. Asimismo, reconvino alegando que la causa de acción instada resultaba frívola y difamatoria, por constituir un ataque abusivo a la honra y reputación del testador Pedro Remberto Fagot Bigas. Indicó, además, que la presentación de la demanda suponía un abuso del derecho y que la parte demandante no había obrado de buena fe. Por ello, solicitó que se impusieran sanciones a la parte demandante, así como que se le concediera una suma no menor de trescientos mil dólares ($300,000.00) por concepto de daños y perjuicios.

Posteriormente, el 7 de abril de 2025, la parte demandante presentó una *Solicitud de Orden a Instituciones Bancarias[4]*, mediante la cual sostuvo que debido a que el pleito versaba sobre la

---

[2] Véase, expediente electrónico del caso SJ2025CV00586 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada 1, *Demanda.*
[3] *Íd.,* Entrada 55, *Contestación Preliminar a Demanda.*
[4] *Íd.,* Entrada 105, *Solicitud de Orden a Instituciones Bancarias.*

división de la comunidad de bienes hereditarios de la Sucesión de Margarita Bigas Ojeda y de la Sucesión de Pedro Remberto Fagot Rodríguez, para poder lograr acceso a toda la información pertinente en cuanto a los activos y pasivos heredados, era indispensable conocer la existencia de toda cuenta bancaria o deuda a nombre de los causantes y sus respectivos balances a la fecha del fallecimiento. Como parte de su escrito, incluyó también proyectos de orden dirigidos a las cuentas bancarias de Pedro Remberto Fagot Bigas.

Oportunamente, el 23 de abril de 2025, la parte demandada presentó una *Réplica a "Solicitud de Orden a Instituciones Bancarias" [...].*[5] En esta, se opuso a que se expidieran órdenes para identificar cuentas a nombre de Pedro Remberto Fagot Bigas, bajo el fundamento de que la información de dichas cuentas no era pertinente al caso, por no tratarse de la herencia sobre la cual se solicitaba la partición.

El 24 de abril de 2025, la parte demandante presentó una *Dúplica a Réplica a 'Solicitud de Orden a Instituciones Bancarias' y Solicitud de Orden.*[6] Allí expuso que, si bien la parte demandada se opuso a su solicitud alegando que esta obedecía a que no contaban con información para sustentar las alegaciones de su causa de acción, lo cierto era que los documentos producidos revelaban que, según alegado en la *demanda*, Pedro Remberto Fagot Bigas tenía el control absoluto de las cuentas de las sucesiones de sus progenitores. De forma que era indispensable que se emitieran las órdenes solicitadas para que las instituciones bancarias produjeran la información sobre cualquier cuenta a nombre de este.

Sometido el asunto y evaluados los escritos de las partes, el 28 de abril de 2025, el foro primario emitió una *Resolución y Orden*[7],

---

[5] *Íd.,* Entrada 115, *Réplica a "Solicitud de Orden a Instituciones Bancarias" [Entrada #105].*

[6] *Íd.,* Entrada 116, *Dúplica a Réplica a 'Solicitud de Orden a Instituciones Bancarias' y Solicitud de Orden.*

[7] *Íd.,* Entrada 124, *Resolución y Orden.*

mediante la cual determinó que la información sobre las cuentas de Pedro Remberto Fagot Bigas era pertinente. Razonó el foro de instancia que, según alegado por la parte demandante, Pedro Remberto Fagot Bigas tuvo el control de las cuentas de las sucesiones objeto del pleito y, por ende, era pertinente descubrir los balances y movimientos en dichas cuentas para determinar la veracidad de tal planteamiento. Por tal razón, concluyó que procedía expedir las órdenes dirigidas a obtener información de las cuentas a nombre de Margarita Bigas Ojeda, Pedro Remberto Fagot Rodríguez y Pedro Remberto Fagot Bigas.

Así las cosas, las órdenes dirigidas a las instituciones bancarias fueron firmadas y expedidas por el foro primario el 28 de abril de 2025.[8] Posteriormente, tras obtener la información solicitada a dichas instituciones, el 21 de julio de 2025, la parte demandante presentó una *Moción Solicitando se Ordene Depósito Judicial*[9]. En esta, informó el resultado de las gestiones efectuadas y, a su vez, solicitó que se ordenara a las instituciones bancarias depositar en el tribunal el balance actual y los intereses de las cuentas que tenían bajo su custodia.

Luego de varias incidencias procesales, el 16 de septiembre de 2025, la parte demandada presentó su *Oposición a "Moción Solicitando se Ordene Depósito Judicial" […]*.[10] Reclamó que el depósito judicial de las sumas de dinero depositadas en instituciones bancarias pertenecientes a la Sucesión de Pedro Remberto Fagot Bigas constituiría un embargo ilegal de dichos fondos, en contravención a su debido proceso de ley.

Evaluadas las posturas de las partes, el 30 de septiembre de 2025, el foro primario notificó una *Resolución*[11] mediante la cual

---

[8] *Íd.*, Entrada 125 a Entrada 130, *Resolución y Orden.*
[9] *Íd.*, Entrada 175, *Moción Solicitando se Ordene Depósito Judicial.*
[10] *Íd.*, Entrada 214, *Oposición a "Moción Solicitando se Ordene Depósito Judicial" [Entrada #175].*
[11] *Íd.*, Entrada 222, *Resolución.*

declaró *ha lugar* la solicitud de la parte demandante y, en consecuencia, ordenó el depósito judicial. Además, manifestó que el depósito en el tribunal no constituía un embargo a tenor con la Regla 56 de Procedimiento Civil, 32 LPRA Ap. V. Sostuvo también que, conforme a la Regla 35.3 de Procedimiento Civil, *supra*, la suma depositada podía ser retirada en cualquier momento por orden del tribunal.

En desacuerdo con la referida determinación, el 16 de octubre de 2025, la parte demandada presentó un escrito intitulado *En Reconsideración a Resolución [...].*[12] Expuso que la parte demandante solicitó que se les ordenara a terceros el depósito de ciertas sumas de dinero, alegando que procedía hacerlo al amparo de la Regla 35.3 de Procedimiento Civil, *supra*, pero no presentó prueba que justificara tal proceder. Sostuvo, además, que la parte demandante no era miembro de la Sucesión de Pedro Remberto Fagot Bigas, por lo que no tenía titularidad sobre cuota alguna en dichas cuentas, como concluyó el tribunal. Añadió que una mera alegación de que Pedro Remberto Fagot Bigas poseía el control absoluto de las cuentas de las sucesiones objeto de partición no era suficiente para establecer que la parte demandante tenía una participación en las cuentas bancarias de este. Enfatizó que el fin ulterior del depósito judicial sobre el dinero de sucesión era el embargo, ello en contravención al debido proceso de ley.

Por su parte, el 6 de noviembre de 2025, la parte demandante presentó su *Oposición a Moción en Reconsideración a Resolución.*[13] Replicó que la determinación del tribunal no constituía una orden de embargo preventivo ni una incautación ilegal de bienes, sino que únicamente pretendía colocar bajo custodia del tribunal la totalidad

---

[12] *Íd.*, Entrada 227, *En Reconsideración a Resolución [Entrada #222].*
[13] *Íd.*, Entrada 236, *Oposición a Moción en Reconsideración a Resolución [Entrada #222].*

de los fondos depositados en las cuentas bancarias, los cuales debían ser considerados en la liquidación de las comunidades hereditarias Fagot Rodríguez y Bigas Ojeda, sin prejuzgar la reclamación.

Entretanto, el 25 de noviembre de 2025, la parte demandada instó una *Moción Solicitando la Descalificación de la Lcda. Joanna Bocanegra Ocasio.*[14] Alegó que esta era la esposa del demandante, el Lcdo. José M. Marxuach Fagot, lo cual creaba una relación de conflicto de interés directo que comprometía la imparcialidad y la libertad de criterio propio requeridas del abogado que representa a una parte, conforme a la práctica sana de la abogacía y los cánones de ética profesional aplicables. Subrayó que la intervención profesional de la abogada se encontraba entrelazada con sus intereses personales y afectivos, y enumeró una serie de situaciones que, a su juicio, sustentaban sus alegaciones.

Por su parte, el 15 de diciembre de 2025, la parte demandante presentó su *Oposición a Moción Solicitando Descalificación.*[15] En esta, sostuvo que no había incurrido en violación alguna a los Cánones de Ética Profesional que ameritara su descalificación y que, por el contrario, la solicitud constituía un mero mecanismo de la parte demandada para dilatar los procedimientos.

Así las cosas, el 9 de febrero de 2026, notificada el 10 de febrero de 2026, el foro primario emitió una primera *Resolución*[16] mediante la cual declaró no ha lugar a la solicitud de descalificación instada por la parte demandada. Concluyó el foro recurrido que las razones expuestas no constituían violaciones éticas que impidieran que la abogada continuara representando a la parte demandante. Además, en esa misma fecha, notificó una *Resolución Interlocutoria*[17]

---

[14] *Íd.*, Entrada 248, *Moción Solicitando la Descalificación de la Lcda. Joanna Bocanegra Ocasio.*
[15] *Íd.*, Entrada 271, *Oposición a Moción Solicitando Descalificación.*
[16] *Íd.*, Entrada 288, *Resolución.*
[17] *Íd.*, Entrada 289, *Resolución Interlocutoria.*

mediante la cual denegó la solicitud de reconsideración instada por la parte demandada respecto a la orden de depósito judicial.

Insatisfecha aún, el 12 de marzo de 2026, la parte peticionaria acudió ante este foro revisor mediante *Petición de Certiorari* y le imputó al foro primario la comisión de los siguientes errores:

> **Primer Error**: Incurrió en grave error de Derecho el TPI al ordenar que bienes pertenecientes al caudal relicto del causante Pedro Remberto Fagot Bigas (Betito) y por ende de la Sucesión aquí demandada y aquí comparecientes fueran incautados y sacados de los bancos donde estaban depositados para ser depositados en la Secretaría de ese Tribunal, lo cual constituyó un embargo en violación al debido proceso de ley establecido en la Regla 56 de Procedimiento Civil y lo establecido en Rivera v. Stowell, 133 DPR 881.

> **Segundo Error**: Incurrió en grave error de Derecho el TPI al declarar sin lugar la solicitud de descalificación de la Lcda. Joanna Bocanegra Ocasio, abogada de la parte demandante, siendo esposa de la demandante José M. Marxuach Fagot, cuñada de la demandante María Elena Marxuach Fagot, y de la demandante Carmen Margarita Fagot Bigas, tía de los anteriores demandantes ya que esta íntima relación familiar ha impedido e impide que haya una objetiva representación independiente de los demandantes, que impide que este caso haya progresado al día de hoy, existiendo además un claro conflicto de representación de clientes con intereses encontrados. En el TPI de Ponce la Lcda. Bocanegra Ocasio ha actuado junto a su esposo como co-abogada en los casos sobre la Sucesión demandada, que éste y los demás demandantes han intervenido como abogado y como parte.

El 24 de marzo de 2026, compareció la parte recurrida mediante *Escrito en Oposición a la Expedición del Auto de Certiorari.* Analizadas las comparecencias de ambas partes, resolvemos.

## II.

## A.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[18]

---

[18] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.[19] Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento[20], se justifica nuestra intervención. Estos criterios son:

A.   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

---

[19] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).

[20] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025).

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* guía la discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[21]

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[22] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

**B.**

Nuestro ordenamiento civil provee diversas salvaguardas para que la sentencia que en su día se obtenga, pueda ser ejecutada.[23] A esos fines, la Regla 56 de Procedimiento Civil, *supra*, regula los mecanismos y procedimientos que un demandante tiene a su alcance para asegurar la efectividad de la sentencia que ha obtenido

---

[21] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).
[22] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).
[23] *Cacho Pérez v. Hatton Gotay y otros*, 195 DPR 1, 12 (2016).

a su favor o que anticipa obtener.[24] Así, mediante petición al tribunal, antes o después de dictada la sentencia, el reclamante solicitará el remedio provisional que considere apropiado para asegurar su ejecución.[25]

En lo pertinente, las Reglas de Procedimiento Civil, *supra*, reconocen el embargo como uno de los remedios provisionales que puede ser concedido por un tribunal, a solicitud del reclamante, para asegurar la efectividad de una sentencia.[26] El procedimiento de embargo, al igual que la prohibición de enajenar, se encuentra regulado por las Reglas 56.2 a 56.4 de Procedimiento Civil, *supra*. Dichas disposiciones establecen que el tribunal deberá expedir, a moción de la parte reclamante, una orden de embargo tras la prestación de fianza. No obstante, instituyen que no se podrá expedir una orden de embargo sin previa notificación y vista, excepto cuando la parte reclamante demuestre tener un previo interés propietario sobre la cosa embargada, la existencia de circunstancias extraordinarias o la probabilidad de prevalecer mediante prueba documental fehaciente que demuestre que la deuda es líquida, vencida y exigible.[27]

De forma que, como norma general, en todo caso en que se solicite algún remedio provisional, como lo es el embargo, se deberá notificar a la parte adversa y celebrar una vista previa, así como exigir la prestación de fianza.[28] Ahora bien, por vía de excepción, la Regla 56.4 de Procedimiento Civil, *supra*, permite la expedición de una orden de embargo sin la prestación de fianza cuando: (1) apareciere en documentos públicos o privados que la obligación es legalmente exigible; (2) se tratare de un litigante insolvente, y a juicio del tribunal la demanda adujere hechos suficientes para establecer

---

[24] *BPPR v. SLG Gómez-López*, 213 DPR 314, 331 (2023).
[25] *Nieves Díaz v. González Massas*, 178 DPR 820, 839 (2010).
[26] *Rivera Rodríguez & Co. v. Lee Stowell*, 133 DPR 881, 894 (1993).
[27] *Cacho Pérez v. Hatton Gotay y otros*, supra, pág. 14.
[28] *Rivera Rodríguez & Co. v. Lee Stowell*, supra, pág. 896.

una causa de acción cuya probabilidad de triunfo pudiera demostrarse, y hubiere motivos fundados, previa vista, de que si no se concede el remedio provisional la sentencia sería académica porque no habría bienes sobre los cuales ejecutarla, o (3) se solicitare el remedio después de la sentencia.[29]

La precitada regla permite además que cualquier parte afectada por cualquier orden dictada sin notificación y vista presente, en cualquier tiempo, una moción para que se modifique o se anule la orden. Dicha moción se señalará para vista en la fecha más próxima posible y tendrá precedencia sobre todos los demás asuntos.[30] A tono con ello, nuestro más Alto Foro ha expresado que una orden de embargo sin notificación y vista previa aumenta los riesgos de hacer una determinación que prive al dueño de su interés propietario sobre el bien. Por ello, no será suficiente el mero examen de las alegaciones contenidas en una moción o una demanda.[31]

De igual forma, en el ejercicio de su discreción para conceder o denegar tal remedio o medida cautelar, el tribunal habrá de tomar en consideración los siguientes criterios: (1) que sean provisionales; (2) que tengan el propósito de asegurar la efectividad de la sentencia que en su día se pueda dictar y (3) que se tomen en consideración los intereses de todas las partes, según lo requiera la justicia sustancial y las circunstancias del caso.[32]

Finalmente, cabe puntualizar que las exigencias del debido proceso de ley aplican a los embargos, independientemente de que la incautación sea temporera, pues el alegado deudor pudiera ser privado de su propiedad.[33]

---

[29] *Citibank et al. v. ACBI et al.*, 200 DPR 724, 734 (2018).
[30] Regla 56.4 de Procedimiento Civil, *supra.*
[31] *Rivera Rodríguez & Co. v. Lee Stowell*, supra, págs. 898-899.
[32] *Engineering Service v. AEE,* 209 DPR 1012, 1021 (2022); *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 489 (2019).
[33] *Rivera Rodríguez & Co. v. Lee Stowell*, supra, pág. 890.

**C.**

De otro lado, es importante resaltar que la figura del depósito a que se refiere la Regla 35.3 de Procedimiento Civil, *supra,* es un elemento procesal en casos en que existe un pleito, para poner en custodia la totalidad o parte del bien reclamado. Así las cosas, la mencionada Regla 35.3, *supra,* dispone lo siguiente:

> En un pleito en que cualquier parte del remedio que se solicite sea una sentencia ordenando el pago de una suma de dinero o la disposición de cualquier otra cosa que pueda ser objeto de entrega, una parte, previa notificación a cada una de las partes, y con permiso del tribunal, podrá depositar en el tribunal la totalidad de dicha suma o cosa, o cualquier parte de la misma, para ser retenida por el secretario sujeta a ser retirada, en todo o en parte, en cualquier momento por orden del tribunal.

Como es de notar, en el depósito judicial, la consignación de la cosa está subordinada a la resolución final que recaiga en el pleito existente. Es meramente un elemento procesal, para poner "*in custodia legis*" la totalidad o parte del bien reclamado, siempre que el remedio que se solicite sea el pago de dinero o cosas que sean objeto de entrega.[34] Si el tribunal accede a que la cosa sea depositada, será deber del Secretario retenerla hasta tanto el tribunal permita, mediante orden, que se retire en todo o en parte.[35]

**D.**

El Tribunal de Primera Instancia tiene la facultad de ordenar la descalificación de los abogados que participan en un caso, bien para prevenir violaciones a las Reglas de Conducta Profesional de Puerto Rico o para evitar actos disruptivos de los abogados durante el trámite de un pleito.[36] Esta facultad es inherente al poder del Tribunal para gobernar los procedimientos ante sí. Su ejercicio no tiene la naturaleza de una medida disciplinaria, poder que está

---

[34] J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., Publicaciones JTS, 2011, Tomo III, pág. 1033.

[35] *Íd.*

[36] *Orill v. El Farmer Inc.,* 204 DPR 229, 240-241 (2020); *Meléndez v. Caribbean Int'l. News,* supra*,* pág. 661.

reservado al Tribunal Supremo de Puerto Rico, sino que constituye una determinación procesal.[37]

La descalificación puede ser ordenada a solicitud de parte o por el Tribunal *motu proprio*.[38] En las situaciones en que sea la parte contraria quien solicite la descalificación, el tribunal deberá considerar si quien solicita este remedio tiene legitimación para hacerlo, la gravedad del conflicto de interés implicado, la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados involucrados, la etapa del procedimiento en que surja la controversia y su posible efecto en cuanto a la resolución justa, rápida y económica del caso, y el propósito detrás de la descalificación, esto es, si la solicitud está siendo utilizada para dilatar los procedimientos.[39]

Ahora bien, la determinación de un tribunal de instancia respecto a la descalificación de un abogado está impregnada de un alto grado de discreción que tiene dicho foro en el manejo procesal de un caso.[40] Sin embargo, dicha discreción no es óbice para que los foros apelativos revisen estas determinaciones.[41] El Tribunal Supremo ha resuelto expresamente que las órdenes de descalificación de abogado son revisables mediante el auto de *certiorari* dado que esperar a una apelación podría constituir un fracaso irremediable de la justicia.[42]

En este contexto, la Regla 40 del Reglamento de este Tribunal[43] establece los criterios que debemos tomar en consideración al atender una solicitud para revisar tales determinaciones. De tal forma, los tribunales apelativos estamos

---

[37] *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 660-661 (2000).
[38] *Íd.*, pág. 660.
[39] *Otaño v. Vélez*, 141 DPR 820, 828 (1996); *Luquilux Gas Corp. v. Berríos, Zaragoza*, 138 DPR 850, 864-865 (1995).
[40] *Meléndez v. Caribbean Int'l. News*, supra, pág. 664.
[41] *Job Connection Center v. Sups. Econo*, 185 DPR 585, 602 (2012).
[42] *Íd.*, pág. 601.
[43] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025).

llamados a revisar la decisión sobre la descalificación de un abogado solamente si se demuestra que hubo un craso abuso de discreción, que el foro primario actuó con prejuicio o parcialidad, que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitará un perjuicio sustancial.[44] Lo anterior le impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro primario.[45]

### III.

Nos corresponde determinar si abusó de su discreción el tribunal de instancia al colocar bajo custodia judicial fondos identificados en el descubrimiento de prueba y, según alegado por la parte demandante, vinculados a las sucesiones cuya liquidación se reclama en el pleito de epígrafe. *Veamos.*

Es la contención de la parte peticionaria que el foro primario erró al ordenar que bienes pertenecientes al caudal relicto de Pedro Remberto Fagot Bigas fueran incautados y retirados de las instituciones bancarias donde estaban depositados para ser consignados en la Secretaría del Tribunal, constituyendo tal acción un embargo en violación al debido proceso de ley. Manifiesta que la Regla 35.3 de Procedimiento Civil, *supra,* sobre depósito judicial, está dirigida a una parte en el pleito que desee depositar en el tribunal la totalidad de una suma de dinero que tenga en su posesión y sobre la cual exista una reclamación, previa autorización del tribunal. Plantea que la solicitud de depósito judicial de la parte recurrida tuvo como propósito asegurar la sentencia que pudiera obtener en su día, si alguna, y privarle de fondos necesarios para la administración de la sucesión. Así, reitera que, en realidad, dicha

---

[44] Véase, además, *Job Connection Center v. Sups. Econo*, supra, pág. 602; *Meléndez v. Caribbean Int'l. News*, supra, págs. 664-665; *Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170, 181 (1993); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[45] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

actuación constituía un embargo al amparo de la Regla 56 de Procedimiento Civil, *supra*, y que se violó su derecho al debido proceso de ley, toda vez que la parte recurrida no presentó evidencia alguna que justificara la expedición de la referida orden sin la celebración de una vista.

Por su parte, la parte recurrida enfatiza que el depósito judicial ordenado por el foro primario no constituyó un embargo ni una incautación de bienes. Sostiene que el depósito judicial persigue facilitar la solución de una controversia sobre bienes muebles, a la vez que protege su integridad y disponibilidad hasta que se resuelva definitivamente la reclamación. A su vez, expone que el foro primario estableció parámetros y salvaguardas incompatibles con la teoría de una incautación o *taking*, según alegado por la parte demandada, ya que, por el contrario, se trató de una medida de conservación y administración a la luz de lo alegado en la demanda. Concluye que era razonable que el tribunal ordenara el depósito para así preservar los fondos mientras se dilucida su verdadera composición y destino.

De entrada, es preciso señalar que, en nuestro ordenamiento jurídico es norma trillada que, la denominación que se le otorgue a una actuación judicial no determina su verdadera naturaleza. Lo determinante es su efecto práctico. "Después de todo, es el contenido de un escrito, no el título que se le dé, el que determina su naturaleza."[46] Así, cuando una orden judicial tiene el efecto de privar a una parte del uso, control o disposición de sus bienes con el propósito de asegurar la efectividad de una eventual sentencia, dicha medida debe evaluarse como un embargo o remedio provisional, independientemente del nombre que se le haya dado.

En ese sentido, según expuesto anteriormente, la Regla 56 de Procedimiento Civil, *supra*, establece el mecanismo aplicable para la

---

[46] *Figueroa v. Del Rosario*, 147 DPR 121, 127 (1998).

concesión de remedios provisionales dirigidos a asegurar la efectividad de una sentencia, incluyendo el embargo, y exige el cumplimiento de garantías procesales mínimas, tales como la demostración de los méritos de la reclamación y, como norma general, la celebración de una vista previa, salvo circunstancias excepcionales. Por su parte, la Regla 35.3 de Procedimiento Civil, *supra*, regula el depósito judicial como un mecanismo mediante el cual una parte consigna en el tribunal una suma de dinero o cosa objeto de controversia, pero no autoriza, por sí sola, la incautación de bienes en posesión de terceros ni su traslado forzoso al tribunal.

A la luz de lo anterior, resulta evidente que la orden emitida por el foro primario, aunque denominada depósito judicial, tuvo el efecto práctico de privar a la parte demandada del control y la disposición de los fondos depositados en las instituciones bancarias, con el propósito de preservarlos para una eventual adjudicación en el pleito. En consecuencia, dicha actuación constituye, en esencia, un embargo o remedio provisional sujeto a las disposiciones de la Regla 56 de Procedimiento Civil, *supra*. Sin embargo, del expediente no surge que el foro de instancia haya cumplido con los requisitos procesales exigidos por dicha regla, particularmente en cuanto a la presentación de evidencia que justificara la medida, la prestación de fianza y la concesión de una oportunidad adecuada para ser oído mediante la celebración de una vista.

En virtud de lo antes expuesto, resulta forzoso concluir que erró el foro recurrido al ordenar el depósito de los bienes en la Secretaría del Tribunal sin cumplir con el proceso establecido en la Regla 56 de Procedimiento Civil, *supra*. En consecuencia, corresponde devolver el caso al foro primario para la celebración de los procedimientos correspondientes, incluyendo la celebración de una vista, a fin de que se determine si procede la concesión del remedio solicitado conforme a derecho.

En su segundo señalamiento de error, la parte peticionaria señala que incidió el foro primario al denegar la solicitud de descalificación de la Lcda. Joanna Bocanegra Ocasio. Plantea que la estrecha relación familiar entre la abogada y su cliente impide una representación objetiva e independiente, además de obstaculizar el adecuado curso del caso. Aduce, asimismo, la existencia de un conflicto de intereses por la alegada representación de clientes con intereses encontrados. Asegura la parte peticionaria que un examen del trámite procesal ante el foro de instancia demuestra que la abogada carece de independencia de criterio, toda vez que su intervención profesional se encuentra entrelazada con intereses personales y afectivos. Añade que la abogada presentó una declaración en apoyo a una solicitud de orden protectora, lo que, según aduce, la convirtió en testigo material de la parte demandante, generando una situación incompatible con su labor.

En respuesta, la parte recurrida sostiene que los argumentos de la parte peticionaria no encuentran apoyo ni en los anteriores Cánones de Ética Profesional ni en las vigentes Reglas de Conducta Profesional. En ese sentido, aduce que no existe prohibición alguna respecto a la representación de un cónyuge en un procedimiento judicial. Además, rechaza la alegación de que la presentación de una declaración haya convertido a la abogada en testigo material de hechos es falsa. Expone que nuestro más Alto Foro ha reconocido que podría surgir una objeción válida cuando, en la combinación de roles del abogado, esta deba declarar sobre hechos en controversia basados en su conocimiento personal. No obstante, aclara que dicha limitación no aplica cuando el abogado se limita a comentar la prueba presentada por la parte contraria. Así, refuta que la declaración en cuestión no versa sobre hechos materiales relacionados con la liquidación, sino sobre un asunto de carácter procesal. Añade que sus clientes, todos miembros de las

sucesiones, persiguen un objetivo común, a saber, la terminación de la comunidad hereditaria y la adjudicación de sus participaciones.

Luego de examinado el expediente, así como el derecho aplicable a tenor con los parámetros que contempla la Regla 40 del Tribunal de Apelaciones, *supra,* no encontramos razón para concluir que la denegatoria de la solicitud de descalificación constituyera un craso abuso de su discreción, que el foro primario actuara con prejuicio o parcialidad, o que incurriera en error en la interpretación o aplicación de normal procesal o de derecho sustantivo alguna al negarse a descalificar a la Lcda. Bocanegra Ocasio de la representación legal de la parte demandante.

No podemos pasar por alto que la determinación de un tribunal en torno a la descalificación de un abogado está revestida de un alto grado de discreción, propio de su facultad inherente para dirigir los procedimientos y salvaguardar la sana administración de la justicia.[47]    En conclusión, no se cometió el segundo error señalado.

**IV.**

Por los fundamentos antes esbozados, expedimos el auto de *certiorari* en los siguientes términos. Por un lado, *revocamos* la *Resolución* emitida el 26 de septiembre de 2025, y notificada el 30 de septiembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan, que ordenó el depósito de los bienes en la Secretaría del Tribunal sin cumplir con el proceso establecido en la Regla 56 de Procedimiento Civil. En consecuencia, devolvemos el caso al foro primario para que celebre los procedimientos correspondientes a la Regla 56, supra, incluyendo la celebración de una vista, a fin de que se determine si procede lo solicitado por los

---

[47] *Meléndez v. Caribbean Int'l. News*, supra, pág. 664.

demandantes-recurridos o la concesión de cualquier otro remedio provisional.

De otra parte, *confirmamos* la *Resolución* emitida el 9 de febrero de 2026 y notificada el 10 de febrero de 2026, que negó la descalificación de la Lcda. Bocanegra Ocasio de la representación legal de la parte demandante.

Se devuelve el caso al foro de instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones